UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| STACEY L. HELTZEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:06-CV-0227 WCL |
| | ) | |
| DUTCHMEN MANUFACTURING, INC., | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**OPINION AND ORDER**

Before the Court is Defendant Dutchmen Manufacturing, Inc.'s ("Dutchmen's") "Motion for Summary Judgment" filed on June 11, 2007. Plaintiff, Stacey Heltzel ("Heltzel") filed her response in opposition on July 11, 2007 to which Dutchmen replied on July 30, 2007 accompanied by a "Motion to Strike" exhibits attached to plaintiff's response. Briefing on the motion to strike was completed on August 24, 2007.[1] For the following reasons, Dutchmen's Motion for Summary Judgment will be DENIED as to plaintiff's claim of FMLA retaliation but GRANTED in all other respects. The Motion to Strike will be GRANTED in part and DENIED in part.

**II. STANDARD OF REVIEW**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

---

[1]The pending motions were set for oral argument before Honorable Allen Sharp, then-presiding United States District Judge in this cause. On September 17, 2007, Chief Judge Robert Miller reassigned the case to the undersigned and vacated the motions hearing.

1

56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 2512; *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir. 1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992)(quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986)).

Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute because the issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id*. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512. Mindful of these principles the court turns now to the case at hand.

### III. FACTUAL BACKGROUND

Dutchmen is a recreational vehicle manufacturer headquartered in Goshen, Indiana. Heltzel was employed by Dutchmen as a final finish cleaner in Dutchmen's Syracuse, Indiana plant from July 11, 2003 to May 4, 2005. She was terminated for violating Dutchmen's attendance policy.

At the time Heltzel was hired, Dutchmen provided her with a copy of its Attendance Policy ("the Policy"). The Policy provides:

> Regular attendance is extremely important if you and your coemployees are to produce efficiently. Absenteeism and tardiness for whatever reason affects everyone. There may be times when absence or later arrival cannot be avoided; in such instances it is entirely the employee's responsibility to notify your Supervisor or another member of management at least 15 minutes before the start of your shift so arrangements can be made to replace you. Employees are required to call in each day that they are absent, except in the instance of a longer-term absence where other arrangements have been made with your Supervisor...Employees who fail to report to work or notify their Supervisor of their absence for two (2) consecutive days will be considered to have voluntarily terminated their employment with the Company. The Company maintains a uniform program on attendance and will follow the disciplinary procedures that are in place. *Each manufacturing facility has a different telephone number; it is the responsibility of the employee to get the number that applies to your plant from your Supervisor.*
>
> Two days of not contact will be considered automatic resignation. If there is no call on the second day within two (2) hours from the start of the shift he/she may receive disciplinary action up to and [sic] including discharge.

(Policy, p. 1 (emphasis in original)). It is undisputed that Heltzel received a copy of the Policy and she acknowledged in her deposition that she understood the specifics of the Policy including the two day no call/no show rule.

On September 22, 2004, Heltzel requested intermittent FMLA leave to attend to her daughter's chronic medical condition. Heltzel's daughter, who was 5 years old at the time of these events, has leg perthes disease which is a degenerative disease of the hip joint causing loss of

3

bone mass which, in turn, leads to some degree of collapse of the hip joint.[2] Dutchmen approved the intermittent FMLA leave and she began her leave time on September 22, 2004. Absences covered by the FMLA did not result in a violation of Dutchmen's attendance policy.[3]

From that time until May 1, 2005, Heltzel utilized 16 days of FMLA leave. Heltzel provided documentation to support her requests for FMLA leave and, when possible provided advance notice of absences. Where advance notice was not possible, Heltzel provided her notice by having her live-in boyfriend, David Hawkins ("Hawkins"), who was also employed by Dutchmen at the Syracuse plant, report her absence to Heltzel's direct supervisor, Assistant Plant Manager Brad Miller ("Miller") when he arrived at work. Heltzel believed this notice was consistent with Dutchmen's FMLA policy which did not specify the form of notice required but did state that Dutchmen "may request documentation supporting the need for leave and periodic reports during the extent of the leave." (Pltf's Exh. 7). Heltzel was never informed that this type of notice was unacceptable.

On March 7 and 8, 2005, Heltzel failed to report to work because she had to care for her daughter. Hawkins also did not report for work on those dates. According to Dutchmen, it received no call from either Heltzel or Hawkins before or during these absences. Assistant Plant Manager Brad Miller ("Miller"), Heltzel's direct supervisor, averred that he received no notification from Heltzel related to her absences.

---

[2] Heltzel's daughter has undergone two surgeries as a result of her condition and periodically has difficulty ambulating and is bedridden. (Heltzel Dep. at 34-36).

[3] Dutchmen utilizes a point system for employee absenteeism. For instance, an unexcused absence counts as either a two point or a three point penalty depending upon whether the employee presents a doctor's note upon return from the absence. Once an employee has accumulated 16 points, he is subject to discipline/termination.

4

When Heltzel and Hawkins returned to work, Plant Manager Mark Smith ("Smith") and Miller informed both of them of the violation of the Policy. Hawkins indicated that he had placed a cell phone call to Dutchmen and left a voicemail message. Hawkins showed both Smith and Miller a call log from his cell phone confirming that he had placed a call to Dutchmen on March 7. Although the call log did confirm that a call had been placed to Dutchmen, both Smith and Miller believed that Hawkins did not speak directly to anyone at Dutchmen regarding the absences. Smith and Miller further attempted to verify Hawkins's contention that he left a voicemail message but could not verify that a message had been left.[4]

Because there was some doubt about whether Hawkins and Heltzel had, in fact, attempted to comply with the Policy, Smith and Miller did not terminate them for an attendance violation. Instead, Heltzel and Hawkins were issued the following written warnings:

> When calling in to report being absent you must talk to either Mark Smith or Brad Miller. It is no longer acceptable to leave a message. Plant # 574-537-0600 Mark Smith ext. 8215 Mark Smith Direct # 574-975-0573

Both warnings indicated that this notice was a "last and final warning." Heltzel was eventually credited for two days of FMLA leave for these two days of missed work.

According to Heltzel and Hawkins, they were not told at this time, or at any other time, that Hawkins could not report an absence on behalf of Heltzel or vice-versa. Their understanding was that to report an absence the reporting person had to speak directly with a supervisor and that leaving a message would not constitute notice.

On March 21, 2005, Heltzel was again needed at home to care for her daughter. Hawkins

---

[4] Around this same time frame, Dutchmen had implemented a new voicemail messaging system throughout the plant. Dutchmen was concerned that the new system was malfunctioning and thus, they issued a notice after this incident indicating that instructed employees not to call the answering system but to call an alternate number to report an absence.

5

reported Heltzel's absence directly to Miller. Miller did not inform Hawkins that this form of notice was unacceptable to excuse Heltzel's absence. Heltzel also utilized FMLA leave in April 2005 which corresponded with one of her daughter's surgeries.[5]

On May 2 and 3, 2005, Heltzel missed work to attend to her daughter. Hawkins attended work on both of these days and reported her absences directly to Miller along with the reason for those absences. When Heltzel returned to work on May 4, 2005, Miller and Smith notified her that she was terminated for violation of the two day no call/no show Policy.

## II.  MOTION TO STRIKE

Defendants have filed a motion to strike seeking to strike portions of the affidavits and deposition testimony of Heltzel and Hawkins on the grounds that particular portions do not comport with Fed.R.Civ.P. 56. Federal Rule of Civil Procedure 56 states that affidavits filed in support of summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). "An affidavit not in compliance with Rule 56 can neither lend support to, nor defeat, a summary judgment motion." *Paniaguas v. Aldon Cos.*, No. 2:04-cv-468-PRC, 2006 WL 2568210, at *4 (N.D. Ind. Sept. 5, 2006) (citing *Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145, 1148-49 (7th Cir. 1989); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989)).

"[W]hen considering a motion to strike portions of an affidavit in support of a motion for

---

[5]Plaintiff represents that at the time she took this leave in April that she was not contacted by Dutchmen regarding these absences nor was she informed that she had to personally call her supervisor related to this absence. This is a bit disingenuous since elsewhere Plaintiff represents that she provided advance notice to Dutchmen of her need for FMLA leave related to her daughter's surgeries. Assuming that this is true, Dutchmen was aware *in advance* that Heltzel would be absent from work. The issue in this case is whether the notice Heltzel provided for unexpected absences was sufficient.

6

summary judgment, courts will only strike and disregard the improper portions of the affidavit and allow all appropriate recitations of fact to stand." *Id*.; *see also Stromsen v. Alumna Shield Indus., Inc.*, No. 89-C5036, 1993 WL 34727, at *4 (N.D. Ill. Feb. 8, 1993); *Toro Co. v. Krouse, Kern & Co.*, 644 F. Supp. 986, 989 (N.D. Ind. 1986); Charles Alan Wright, et al., *Federal Practice & Procedure* § 2738 (3d ed. 2006). Specifically, the following statements are not properly included in an affidavit and should be disregarded: (1) conclusory allegations lacking supporting evidence, *see DeLoach v. Infinity Broad.*, 164 F.3d 398, 402 (7th Cir. 1999); (2) legal argument, *see Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985); (3) self-serving statements without factual support in the record, *see Shank v. William R. Hague, Inc.*, 192 F.3d 675, 682 (7th Cir. 1999); inferences or opinions not "grounded in observation or other first-hand experience," *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991); and (5) mere speculation or conjecture, *see Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999).

First, Dutchmen seeks to strike on portion of Heltzel's deposition testimony as well as a paragraph of her Affidavit on the theory that she lacks personal knowledge of the events set out in this testimony.[6] The crux of Dutchmen's objections is Heltzel's testimony that there was an

---

[6]Specifically, the testimony Dutchmen seeks to strike is:

Q. ...Did anyone ever tell you that you personally had to call in to report in your absences?
A. Everybody, if the husband and wife worked in the same building or even next door, they would report if the other one wouldn't be there.
Q. But you weren't husband and wife?
A. Right, but even boyfriend and girlfriend that worked there would come in and say, you know. Like there was a father that worked at my plant and his daughter worked at the other plant and she would stop in and say, "my dad is not coming in today."
    So if they wanted to be specific they should have said it for everybody, because this went on all the time.

(Deposition of Heltzel, p. 62, line 9-21).

I was told that in the future that if I was going to call in to report absences, I should not leave a message, but to instead talk directly to either Mark Smith or Brad Miller. I was never told that David could not

7

unwritten policy or practice that relatives or others who worked at Dutchmen could report absences on behalf of another relative or roommate.

Certainly, Heltzel is permitted to testify as to her understanding or impression as to whether she had to personally report her absence or could utilize Hawkins as her proxy. The Federal Rules of Evidence allow a non-expert witness to testify about opinions or inferences that are "rationally based on the perception of the witness" and are "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Fed.R.Evid. 701. Heltzel avers that Hawkins had reported her absences previously and that she was never told that this was not appropriate notice. This testimony is within her personal knowledge and thus, there is nothing impermissible about this testimony.

As for whether other employees reported their absences through proxies, this is more speculative, although the court concludes it is permissible testimony. It is true that Heltzel provides no specific details to reveal her personal knowledge that the use of "proxy reporting" was a regular occurrence. However, she is permitted to testify that she believed, based on general statements from others, that they were reporting absences similarly to her. Ultimately, at trial, Heltzel may find herself in a precarious position on cross-examination since she cannot, or at least to date has not, identified any specific individuals who have engaged in "proxy reporting." Yet, whether Heltzel's credibility may suffer at trial as a result of her inability to recollect details

---

report an absence for me by speaking directly to Smith or Miller, or that I could not report an absence for David in that manner. The understanding was that it was necessary to leave information about an absence with a live person, in order to avoid the possibility of a message being left on the answering machine and then either being lost by the system or not recorded. It was also understood that it would not cause problems if I had David report an absence for me, so long as he spoke personally to Smith or Miller.

(Affidavit of Heltzel, ¶7).

8

does not preclude the evidence which is "rationally based on her perception" from factoring into this phase of the case.

Dutchmen also objects to the concluding statement in paragraph 7 of her affidavit contending that Heltzel cannot testify as to what officials at Dutchmen "understood" at the time they issued the Final Warning. As noted above, Heltzel is competent to testify as to her state of mind at the time the officials at Dutchmen issued her and Hawkins the Final Warning. However, she cannot, as she does in her affidavit, purport to testify as to the state of mind of the Dutchmen officials was at the time they issued the Final Warning.[7]

Accordingly, the Defendants' Motion to Strike Heltzel's deposition testimony as well as paragraph 7 in its entirety is DENIED. However, the motion to strike is GRANTED as to the concluding sentence of paragraph 7 of both Heltzel's and Hawkins's affidavit.

Next, Dutchmen seeks to strike paragraphs 6-7, 12, 14, and 16-18 of Hawkins's Affidavit, which contain general averments about situations where Hawkins allegedly witnessed telephone calls being made by Miller to employees who, Hawkins speculates, had not reported to work.[8]

---

[7] A similar analysis is warranted for paragraph 7 of Hawkins' affidavit which contains language identical to that of Heltzel's affidavit. The concluding sentence of paragraph 7 will also be STRICKEN for the reasons recited herein.

[8] More specifically, these paragraphs state:

7.  The understanding was that it was necessary to leave information about an absence with a live person in order to avoid the possibility of a message being left on the answering machine and then either lost or not recorded. (Sometime after March 8, 2005, a memo was even posted by the company notifying employees of problems with the new phone answering system, and directing employees to call an alternate number to report absences to). It was understood that it would not cause problems if Stacey had me report an absence for her so long as I spoke personally to Smith or Miller.

12. While working at Dutchmen Manufacturing, Inc. I witnessed instances in which other employees would be absent from work without notice, or failed to show up on time, and management called them at home to find out if the employee was coming in that day. These employees were not terminated for their absence or failure to show up on time for work.

9

Dutchmen contends that Hawkins has no personal knowledge of the contents of the telephone conversations he alleges occurred in his affidavit. Indeed, Hawkins avers in these paragraphs that he witnessed phone calls being made by Miller to employees who, at least ostensibly, had not reported to work. Hawkins then leaps to the conclusion that the phone calls were related to the employee's attendance. However, nothing in paragraphs 12, 14, and 16 of Hawkins' affidavit demonstrate that Hawkins has any personal knowledge of the reason for the telephone calls or the content of the calls. Rather, Hawkins simply witnessed telephone calls at different times to employees at Dutchmen. The inferences he seeks the court to reach from this testimony is not grounded in observation or other first-hand personal experience and fall instead into the category of "flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience." *See Visser v. Packer Eng'g Assocs., Inc.,* 924 F.2d 655, 659 (7th Cir. 1991). Accordingly, the Defendant's Motion to Strike paragraphs 12, 14, and 16 of Hawkins's affidavit

---

14. I had a co-worker named Ron Pietosi, who worked in the Final Finish Department, doing body repair work. In the Summer of 2005, around the time of the July 4th shutdown, I was at the company picnic table with Brad Miller, in the break room. I witnessed Brad Milller using a cell phone, calling on it and appearing to receive no answer. When Brad Miller got done attempting to make the phone call, he asked me if I knew Ron's number because he could not get an answer at the number he had dialed. I had been Ron's roommate prior to that date, but did not know Ron's new number. Prior to Brad Miller making this call, I had observed that Pietosi had not shown up for work. He furthermore did not show up during the rest of the day. Ron Pietosi was not fired for this incident, and was still working at Dutchmen Manufacturing when I last worked there.

16. On another occasion I observed that a co-worker of mine named Jason Duncan did not show up for work on time. Jason Duncan worked as the group leader in the Slide Out Department. I saw Brad Miller attempt to phone Jason Duncan on that date because Miller called from the table that I was sitting at, and I witnessed the call firsthand. Miller did not reach Duncan. Shortly after Miller tried to call Duncan, Duncan did show up to work. Miller mentioned he had just tried to call Duncan to see if he was coming in to work. This incident took place around the July 4th, 2005 shutdown. Jason Duncan was still employed at Dutchmen Manufacturing when I last worked there.

is GRANTED.

## DISCUSSION

Heltzel alleges that Dutchmen violated FMLA, 29 U.S.C. § 2614(a)(1), because it did not immediately return her to work when she appeared on May 4, 2005, and instead terminated her because of her absences on May 2 and 3, 2005, which, she alleges should have been considered FMLA approved absences.

The FMLA allows eligible employees to take up to twelve weeks of unpaid leave in a twelve month period for certain qualifying reasons, including to care for a child with a serious health condition.[9] 29 U.S.C. § 2612(a)(1). In addition, the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter." *See* 29 U.S.C. § 2614(a)(1); *see also* 29 C.F.R. § 825.220(b) ("Any violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act.").

In their briefs, the parties have argued this case as one of *retaliation* under the FMLA rather than a claim that Dutchmen *interfered* with Heltzel's right to FMLA leave. The distinction is critical because under the former, Plaintiff must raise an inference of discriminatory intent while under the latter, the employer's intent is irrelevant. *See Kauffman v. Federal Exp. Corp*. 426 F.3d 880, 884 -885 (7th Cir. 2005); *Smith v. Diffee Ford-Lincoln-Mercury,* 298 F.3d 955, 960 (10th Cir.2002), *citing King v. Preferred Tech. Group,* 166 F.3d 887, 891 (7th Cir.1999).

---

[9]The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

In this case, however, Heltzel's retaliation claim is identical in substance to an interference claim, i.e., she alleges that Dutchmen terminated her in retaliation for attempting to claim FMLA benefits which is really the same as terminating her to interfere with her exercising those rights. *Williams v. Illinois Dept. of Corrections,* 2007 WL 772933, *8 (S.D.Ill.,2007).[10]  Indeed, "the distinction does not really make a difference in the end because the crux of [the plaintiff's] claim is that h[er] discharge was wrongfully procured." *Id.*  Thus, "what is at stake here is a claim for wrongful discharge, and [the plaintiff] may recover damages or equitable relief for that claim under 29 U.S.C. § 2617 on either an interference/entitlement or a discrimination/retaliation theory." (footnote omitted)).  *Kauffman,* 426 F.3d at 884.

Considering the above, the case at hand is more appropriately termed an interference claim. See *Williams*, 2007 WL 772933 *8 (converting claim to an interference claim because, "there is no need to frame Williams's single claim under two separate but substantively identical theories"). To prevail at summary judgment on such a claim, Heltzel needs only to raise a genuine issue of material fact that: (1) she was eligible for the FMLA's protections; (2) the employer was covered

---

[10]Courts have disagreed about whether "interference" refers to a category of claims separate and distinct from those involving retaliation, or whether it describes a group of unlawful actions, of which retaliation is a part:

> The term 'interference' may, depending on the facts, cover both retaliation claims and non-retaliation claims.. The distinction would matter if the standards of proof used turned on which statutory section were pled, rather than on the nature of the facts and the theory of the case. Yet, whether a claim is characterized as 'interference' or not, its elements actually differ depending on whether the plaintiff is, at bottom, claiming that the employer denied his or her substantive rights under the FMLA or that the employer retaliated against him or her for having exercised or attempted to exercise those rights.

*Colburn v. Parker Hannifin/Nichols Portland Div*., 429 F.3d 325, 331 -332 (1st Cir. 2005).

by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) the employer denied her FMLA benefits to which she was entitled. *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir.2006).

Here, there is no question that Dutchmen is a covered employer or that Heltzel was an eligible employee; rather, the crux of this case depends solely on the adequacy or existence of Heltzel's notice, that is, whether she provided notice consistent with Dutchmen's policy and the FMLA. If Heltzel provided sufficient notice of her intent to take FMLA-qualifying leave, then Dutchmen could not discharge her for the absences related to the notice. If, on the other hand, Heltzel's notice did not put the employer on notice that she intended to take FMLA-qualifying leave, then Dutchmen was within its rights to terminate her for violating its attendance policy.

The notice requirements of the FMLA are not onerous; indeed, an employee need not expressly mention the FMLA in his leave request or otherwise invoke any of its provisions. *See Phillips v. Quebecor World RAI, Inc.,* 450 F.3d 308, 311 (7th Cir.2006) (citing 29 C.F.R. § 825.303(b)). However, FMLA regulations also provide that "[a]n employer may ... require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave." 29 C.F.R. § 825.302(d). Thus, the FMLA does not prohibit employers from terminating employees who do not comply with an internal company policy that requires employees to call-in when they will be absent. "The fact that the absence might be related to a FMLA qualifying event does not abrogate the right of employers to know whether their employees will be coming to work on a particular day." *Knox v. Cessna Aircraft Co.,* 2007 WL 2874228, *5 (M.D.Ga.,2007). And, as is the case here, "an employer's policy that requires employees to call in to work when they will be absent is clearly consistent with FMLA and its regulations because the

13

regulations themselves require that employees give notice of the need for unforeseeable leave as soon as practicable." *Id. See Spraggins v. Knauf Fiber Glass GmbH, Inc.,* 401 F.Supp.2d 1235, 1239-40 (M.D.Ala.2005) (holding that FMLA allows an employer to require notice one hour before the employee's shift begins, as long as it is reasonable to expect the employee, under the individual circumstances, to give such notice).

In this case, the Defendants are correct that a violation of their Policy is a valid reason for Heltzel's termination. In fact, numerous courts have recognized that "no call, no show" policies similar to the one here are consistent with FMLA and have upheld such policies against FMLA challenges. *See, e.g., Bones v. Honeywell Int'l Inc.,* 366 F.3d 869, 878 (10th Cir.2004); *Lewis v. Holsum of Fort Wayne, Inc.,* 278 F.3d 706, 709-10 (7th Cir.2002); *Gilliam v. United Parcel Service, Inc.,* 233 F.3d 969, 971 (7th Cir.2000); *Spraggins,* 401 F.Supp.2d at 1239-40. Yet, there are questions of material fact as to whether violated the policy which preclude summary judgment on plaintiff's FMLA claim. There are disputes in the evidence regarding whether Hawkins provided notice on Heltzel's behalf and, if so, whether that notice was acceptable under the employer's practice and whether the employer had previously accepted such notice. Both Heltzel and Hawkins testified that in the past Hawkins had provided notice of Heltzel's need for FMLA qualifying leave to Dutchmen and Dutchmen accepted this form of notice and counted the absences as FMLA-qualifying. Further, Heltzel and Hawkins both testified that they were never instructed, even after they received the final notice, that the practice of "proxy-reporting" absences was unacceptable. Even more telling, is the allegation that after the final notice was given to both Hawkins and Heltzel, Hawkins reported Heltzel's March 21, 2005 FMLA absence and Dutchmen counted that absence as FMLA leave. Of course, Dutchmen denies that it received any notice at all from either

14

Hawkins or Heltzel for the May 2 and 3, 2005 absences. Whether this survives scrutiny depends on the jury's assessment of the facts of this case. For now, however, summary judgment must be DENIED on plaintiff's FMLA claim.

**ERISA Claim**

Plaintiff also initially asserted an ERISA claim alleging that Dutchmen terminated her because her daughter, who was covered under its health insurance policy, had a prolonged illness. Plaintiff has now conceded that summary judgment is appropriate on this claim. Accordingly, the Defendant's motion for summary judgment on the ERISA claim is GRANTED.

**CONCLUSION**

Based on the foregoing, Dutchmen's Motion for Summary Judgment is DENIED as to plaintiff's claim under the FMLA but GRANTED as to the ERISA claim. The Motion to Strike is GRANTED in part and DENIED in part, as discussed herein.

Entered: December 20, 2007

s/ William C. Lee<br>United States District Court