UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| STACEY L. HELTZEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:06-CV-0227 WCL |
| | ) | |
| DUTCHMEN MANUFACTURING, INC., | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**OPINION AND ORDER**

Before the Court is Defendant Dutchmen Manufacturing, Inc.'s ("Dutchmen's") "Motion to Reconsider" filed on January 18, 2008 wherein Dutchmen seeks the court to reconsider its Opinion and Order of December 20, 2007 that denied the Defendant's Motion for Summary Judgment. Plaintiff, Stacey Heltzel ("Heltzel") filed her response in opposition on January 28, 2008 to which Dutchmen replied on February 11, 2008. For the following reasons, Defendant's Motion to Reconsider will be DENIED.

**Background**

The underlying facts of this case have been previously set forth in this Court's Order Denying the Defendant's Motion for Summary Judgment, [DE 49]. For purposes of this motion, it suffices to say that Heltzel brought suit alleging that Dutchmen violated FMLA, 29 U.S.C. § 2614(a)(1), because it did not immediately return her to work when she appeared on May 4, 2005, and instead terminated her because of her absences on May 2 and 3, 2005, which, she alleges should have been considered FMLA approved absences. As the undersigned noted, to prevail at summary

1

judgment on her claim, Heltzel needs only to raise a genuine issue of material fact that: (1) she was eligible for the FMLA's protections; (2) the employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) the employer denied her FMLA benefits to which she was entitled. *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir.2006).

The crux of the dispute in this case, as the undersigned viewed the evidence, was whether Heltzel raised a genuine issue of material fact as to whether she, in fact, had provided sufficient notice of her intent to take leave.  Dutchmen steadfastly maintains (both then and now) that there is no dispute here; Heltzel violated its two day "no call/no show" policy and therefore, it had a right to terminate her.  Heltzel begs to differ and argues that when the facts are construed favorably to her, there are clearly disputes of material fact about whether she complied with the requirements of Dutchmen's policy.         The facts developed at summary judgment which the court construed favorably to plaintiff, the non-movant, are recounted with brevity here as follows:

Dutchmen has an attendance policy in effect for all employees that states: "Employees who fail to report to work or notify their Supervisor of their absence for two (2) consecutive days will be considered to have voluntarily terminated their employment with the Company."  On March 7 and 8, 2005, Heltzel failed to report to work because she had to care for her daughter.[1]  David Hawkins ("Hawkins"), Heltzel's live-in boyfriend who was also employed by Dutchmen, likewise did not report to work.  Prior to these dates and on at least one occasion thereafter, Hawkins had regularly communicated Heltzel's absences to her supervisor on her behalf, without any objection

---

[1] Heltzel had previously been permitted FMLA leave by Dutchmen for her daughter's serious medical condition.  It is not disputed either that Heltzel's daughter had such a condition or that Heltzel was entitled to FMLA leave for that medical condition.

2

or discipline by Dutchmen. In fact, Dutchmen previously credited Heltzel with FMLA leave even when Hawkins reported the absences on her behalf. That said, on these two particular dates and since Hawkins was also absent, he telephoned Dutchmen and left a voicemail message reporting both of their absences. Dutchmen disputes whether Hawkins in fact left a voicemail message but acknowledges that its voicemail system was malfunctioning at this time and Hawkins provided some proof in the form of his cellular telephone call log to support his contention that he did call in to report the absences. For this reason, Dutchmen did not terminate Hawkins or Heltzel but instead, on March 21, 2005, Dutchmen issued a "Last and Final Warning" to both Heltzel and her boyfriend which read:

> When calling in to report being absent you must talk to either Mark Smith or Brad Miller. It is no longer acceptable to leave a message. Plant # 574-537-0600 Mark Smith ext. 8215 Mark Smith Direct # 574-975-0573

On the same date Dutchmen issued its "Last and Final Warning" Heltzel was absent once again to care for her daughter and, once again Hawkins, reported her absence directly to her supervisor, Brad Miller. There is no evidence that Dutchmen informed Hawkins that his notice on her behalf (the practice the undersigned termed "proxy-reporting") was insufficient notice under either the old or new policy.[2]

On May 2 and 3, 2005, Heltzel missed work to attend to her daughter. Hawkins attended work on both of these days and reported her absences directly to Miller along with the reason for those absences. Again, Hawkins was not notified that his proxy-reporting violated any policy of Dutchmen or that it was insufficient to provide appropriate notice. When Heltzel returned to work

---

[2]In this court's Opinion and Order, the undersigned mistakenly believed that the Last and Final Warning had been issued prior to March 21, 2005. This error has been corrected presently but ultimately this fact has no impact on the court's decision.

on May 4, 2005, Miller and Smith notified her that she was terminated for violation of the two day no call/no show Policy.

Mindful of the above facts, Defendants move for reconsideration of this court's denial of summary judgment claiming that the Court's Opinion and Order contains "patent misunderstandings of the facts designated by the parties which resulted in manifest errors of facts and law." (Motion, ¶3).

## DISCUSSION

Reconsideration is discretionary and such motions serve a limited function. For this reason, it is oft-recited that "this Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *See Quaker Alloy Casting Co. v. Gulfco Indus., Inc.,* 123 F.R.D. 282, 288 (N.D.Ill.1988). Reconsideration should be granted only where the moving party demonstrates that the Court has overlooked or misapprehended factual matters or controlling decisions that were presented to it on the underlying motion. *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir.1990); *LaBouve v. Boeing Co.*, 387 F.Supp.2d 845, 855 (N.D.Ill.,2005). These types of problems "rarely arise and the motion to reconsider should be equally rare." *Id.* The standard is narrowly construed so as to "dissuade repetitive arguments on issues that have already been considered fully by the court." *Caleb & Co. v. E.I. DuPont DeNemours & Co.,* 624 F.Supp. 747, 748 (S.D.N.Y.1985).'

In this instance, this Court has not misapprehended Dutchmen's arguments at all; instead it has correctly understood them but has respectfully disagreed with them. Dutchmen, both now and in its motion for summary judgment, insists that its "Last and Final Warning" is unambiguous on its face and requires an individual employee to personally speak with a supervisor to report an

4

absence.  From this, Dutchmen argues that because the  undisputed evidence demonstrates that Heltzel violated its two day "no call-no show" policy by not personally calling to report her absence, it was entitled to terminate her without running afoul of the FMLA.

The problem with this argument, however, is that it ignores the context from which the "Last and Final Warning" was born and likewise, turns a blind eye to the facts which support the opposing view.  From this court's view, there are genuine issues of material fact about Dutchmen's policy. The evidence, taken in a light favorable to Heltzel, as well as the text of the "Last and Final Warning" supports an inference that its issuance was the direct result of Hawkins attempting to leave a message for the absences on March 7 and 8.  There is no evidence before this court to support the contention that the "Last and Final Warning" was issued because Dutchmen opposed the proxy-reporting practice that until the date of her termination had been an ongoing practice for the plaintiff. Nor is there any evidence that Dutchmen intended the Last and Final warning to make any change to its policy other than to inform Heltzel and Hawkins that leaving a message for a supervisor would not suffice as notice of an absence.   Moreover, both Heltzel and Hawkins testified that they were neither instructed by anyone at Dutchmen nor did they understand that the Last and Final Warning to mean that Hawkins could not report Heltzel absence.[3]

---

[3] In fact, it would be reasonable for a jury to conclude that the Last and Final Warning was designed to make certain that whoever reported the absence spoke to a direct supervisor so that the supervisor had actual notice of the absence and could provide for a replacement. Dutchmen's own policy reads:

> Regular attendance is extremely important if you and your coemployees are to produce efficiently.  Absenteeism and tardiness for whatever reason affects everyone.  There may be times when absence or later arrival cannot be avoided; in such instances it is entirely the employee's responsibility to notify your Supervisor or another member of management at least 15 minutes before the start of your shift so arrangements can be made to replace you.

5

Further, the evidence supports an inference that even Dutchmen did not consider the proxy-reporting practice to run afoul of the Last and Final Warning. There is no evidence that anyone at Dutchmen, even after issuing the Last and Final Warning, notified Hawkins that he could no longer report Heltzel absence or that doing so violated the policy. On the very date the Last and Final Warning was issued, Hawkins reported Heltzel's absence and there is no evidence indicating that he was told this was insufficient notice and that Heltzel had to personally call. Then, on the two days immediately preceding Heltzel's termination, Hawkins again personally reported her absence to her supervisor and, it appears, again was never instructed that Heltzel would have to call to report the absence. A jury is entitled to draw inferences from this evidence and may conclude that Dutchmen's supervisors did not view the Last and Final Warning to encompass proxy-reporting.

In its reply brief, Dutchmen writes: "The question before the Court is not whether there are facts in dispute. Rather the question is whether there are <u>material</u> facts in dispute. Whether Dutchmen accepted notices by Hawkins of Heltzel's absences in the past is not material because the Last and Final Written Warning changed the conditions of the employment of both Hawkins and Heltzel." The problem for Dutchmen is that when construing the facts favorable to Heltzel, it is clear that there *are material facts* as to the meaning of the Last and Final Warning in light of the context in which it was issued and the fact that the practice of proxy-reporting had been ongoing both before and after its issuance. For this reason, the undersigned denied summary judgment.

---

This policy confirms that the point of notifying a Supervisor of an absence is so that arrangements can be made to replace the employee. It would likewise be reasonable for a jury to conclude from the evidence that Dutchmen did not have a complaint about the proxy-reporting that had gone on since there are no disciplinary notices submitted; no evidence that either Hawkins or Heltzel had ever been counseled about the practice; and the proxy-reporting practice seemingly achieves the goal in Dutchmen's policy of notice to a supervisor.

6

From the evidence, a reasonable jury could conclude Heltzel did not violate the two day "no call no show" policy because notice was provided directly to her supervisor on her behalf. Accordingly, the Defendant's Motion to Reconsider is DENIED.

Entered: March 4, 2008

                s/ William C. Lee
                United States District Court